## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** 12-311 |
| | : | |
| v. | : | (Judge Kane ) |
| | : | |
| | : | |
| **ELOHO IDISI-ARAH** | : | |
| **AKA ELOHO ARAH** | : | |
| **AKA JOHN ARAH** | : | **FILED** |
| **AKA JOHN OKWIGBEDI;** | : | **HARRISBURG** |
| **LUCAS OBI** | : | |
| **AKA SULEMAN AJUKWUSUALIM; and** | : | DEC 1 2 2012 |
| **MUYIWA OYEGOKE** | : | MARY E. D'ANDREA, CLERK |
| | | Per_____ |
| | | DEPUTY CLERK |

<u>**INDICTMENT**</u>

<u>**COUNT 1**</u>
**(Conspiracy to Commit Mail Fraud, Wire Fraud and Money Laundering)**

**A.  Background**

Beginning in or around 1999 and continuing through 2010, domestic and foreign based

fraudulent mass marketers, both known and unknown to the Grand Jury, instructed

victims to send Western Union and MoneyGram money transfers to satisfy advance fee

conditions associated with:

1.  Falsely promised lucrative financial awards, loans and offers;

2.  The purchase or sale of various products via the internet; or

3.  The resolution of non-existent personal and family emergencies.

Some of the mass marketing schemes included the manufacture, distribution and

negotiation of counterfeit checks.  The mass marketers used fictitious names, titles,

companies, and addresses when they communicated with victims, and instructed the

victims to send the Western Union and MoneyGram money transfers payable to fictitious name payees.

The defendant **LUCAS OBI**, himself, or through co-conspirators, directed, established and recruited various Western Union and MoneyGram agents, hereinafter sometimes referred to as complicit agents, to process the fraud induced money transfers. The defendant **LUCAS OBI**, and co-conspirators known and unknown to the grand jury, as either middleman or mass marketers, presented the money transfer transactions to the complicit agents in order to convert the money transfers to cash and checks.   The complicit Western Union and MoneyGram agents, including the defendants **ELOHO IDISI-ARAH** and **MUYIWA OYEGOKE,** entered false payee and sender biographical information and identification data into the Western Union and MoneyGram data bases in order to maintain the anonymity of the fraudulent mass marketers and to conceal the nature, location, source, ownership, and control of the fraudulent proceeds.   The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE** distributed the fraudulent proceeds among the co-conspirator complicit agents, mass marketers and middleman.

As used in this Indictment, the term "mass marketer" or "mass marketers" refers to an individual, or group of individuals, who use one or more means of mass communication media, to include the mail, telephone and internet, to distribute fraudulent sweepstakes, loan, employment opportunity and other lucrative financial awards and offers.

The mass marketing schemes included, but were not limited to the following:

SWEEPSTAKES SCHEMES

- Advance fee sweepstakes schemes wherein purported "winners" were directed to pre-pay processing fees and taxes in order to collect their cash prizes.  The Western Union and MoneyGram payees were falsely identified as representatives of public or private sweepstakes organizations or taxing authorities.  As used in this Indictment, the term "winner" refers to an individual who received a fraudulent prize notification and counterfeit check.

LOAN SCHEMES

- Advance fee loan fraud schemes wherein purported successful loan applicants were directed to pay advance fees to purchase insurance or to place security deposits in order to receive guaranteed loan proceeds.  The Western Union and MoneyGram payees were falsely identified as representatives of the purported lenders.  As used in this Indictment, the term "borrower" refers to an individual who was falsely promised a loan.

EMPLOYMENT OPPORTUNITY SCHEMES

- Employment Opportunity schemes wherein job seekers were directed to cash checks and use the proceeds to complete purchases, and send Western Union and MoneyGram money transfers to evaluate retail stores, Western Union and MoneyGram.   The victims, sometimes referred to as "secret shoppers", were directed to retain a portion of the cash proceeds as payment for their services.    As used in this Indictment, the term "secret shopper" refers to an individual who was recruited via the mail to cash checks and send Western Union and MoneyGram money transfers on behalf of purported quality control consultants.

PERSON IN NEED SCHEMES

- Person in Need schemes wherein mass marketers developed an on-line relationship with intended victims or posed as a relative, typically a grandchild, in order to induce the intended victims to send  Western Union or MoneyGram  money transfers for a false need or emergency.

INTERNET PURCHASE SCHEMES

- Internet purchase schemes wherein mass marketers posed as the sellers of large ticket items, in most instances at a lucrative price.  The mass marketers directed the purchasers to send Western Union or MoneyGram money transfers as payment for the items.   In some instances, payable to third parties that reportedly would guarantee delivery of the items.  The products were never delivered.

Domestic and foreign based mass marketers distributed the fraudulent prize notifications and employment opportunities accompanied by checks via Canada Post and the United States mail.  The advance fee loan fraud offers were routinely distributed via the internet.  Telemarketers falsely authenticated the prize notifications, employment opportunities, and loan offers.  Telemarketers directed the recipients to cash the checks to fund the pre-payment of fees which were reportedly a condition of prize delivery, or to complete retail purchases and send Western Union and MoneyGram money transfers in order to evaluate the respective businesses pursuant to the employment opportunity schemes.   The checks cashed by the purported "winners" and "secret shoppers", hereinafter victims, were counterfeit, and returned unpaid to the banks of first deposit. The banks of first deposit initiated collection procedures against the victims for the total value of the counterfeit checks.   The advance fee loan schemes did not ordinarily include the delivery of a check to the intended victim.  As a condition of loan issuance, loan fraud victims were instructed to use personal funds to send Western Union and MoneyGram money transfers to complete collateral and insurance payments.    The prize notifications, employment opportunities and loan offers were fictitious and the claimed association with legitimate public and private sweepstakes or lottery organizations, customer service evaluation businesses and lenders was false.

As used in this Indictment, the term "complicit agent" describes a Western Union or MoneyGram agent who permitted mass marketers, in some instances, middlemen, to cash fraud induced Western Union and MoneyGram money transfers payable to multiple fictitious names. The "complicit agents", entered false names and identification data into the Western Union and MoneyGram computer data bases to conceal the true identity of the mass marketers from the victims, law enforcement and regulatory agencies.  The mass marketers, middlemen and "complicit agents" used thousands of different payee names in order to avoid detection and the scrutiny of anti-money laundering protocols.

The "complicit agents" converted the fraud induced Western Union and MoneyGram money transfers to cash or negotiable Money Transfer Checks (MTCs) drawn on the Western Union and MoneyGram bank accounts.

At all times pertinent to this Indictment:

1.  Western Union and MoneyGram were publicly traded global money transfer companies, sometimes referred to herein as Money Service Businesses (MSBs). The Western Union and MoneyGram networks consisted of over 500,000 agents, sometimes referred to as outlets, worldwide.  Typical Western Union and MoneyGram money transfers are sent among (to and from) family members and close acquaintances.  The average dollar amount of a typical North American Western Union and MoneyGram money transfer approximates $400.

2.  Western Union and MoneyGram money transfer senders were required to present cash and complete a handwritten application, known as a "To Send Money" (Western Union) or "Send" (MoneyGram) form at an authorized Western Union or MoneyGram agent location.  The senders were required to list the amount of the transfers, the names of the payees (receivers), the expected payout locations, and their own names, telephone numbers and addresses on the "To Send Money" and "Send" forms.  The Western Union and MoneyGram

agents collected the money transfer amounts, plus money transfer fees from the senders, and entered the senders' biographical and identification data, along with the names of the intended payees into the Western Union and MoneyGram transactional data bases.  Western Union assigned 10 digit Money Transfer Control Numbers (MTCNs) and MoneyGram assigned 8 digit Reference Numbers, hereinafter "serial numbers" to the transactions.

3.  Western Union and MoneyGram payees were required to physically enter authorized Western Union and MoneyGram agent locations (outlets) and complete  handwritten applications, known as a "To Receive Money" (Western Union) and "Receive" (MoneyGram) forms.  The payees were directed to list their own addresses and telephone numbers, and the name, city and state of the senders and the expected money transfer amounts on the "To Receive Money" and "Receive" forms.  The payees presented the completed "To Receive Money" and "Receive" forms to the Western Union and MoneyGram agents.   The Western Union and MoneyGram agents were then required to query the Western Union or MoneyGram transactional data bases to determine whether the money transfers had been sent by the senders identified by the payees.  For all money transfers in an amount equal to or greater than $1,000 (Western Union) or $900 (MoneyGram) the payees were required to present valid identification documents for examination by the Western Union and MoneyGram agents.  The Western Union and MoneyGram agents were required to enter the payee names, addresses, telephone numbers, and identification document serial numbers into the Western Union and MoneyGram transactional data bases.

4.  In accordance with Western Union and MoneyGram policy, all Western Union and MoneyGram agents named in this Indictment, with the exception of a single agent, Phone Flash, were required to issue Money Transfer Checks (MTCs) payable only to the named money transfer payee in order to document the transaction.  The money transfer payee was required to endorse the MTCs in the presence of the agent.  Upon endorsement, the agent was expected to issue the

appropriate amount of cash to the payee. The agent deposited the MTCs to their business bank account as reimbursement for the cash disbursed to the money transfer payee.  In no instance were the agents permitted to issue the MTCs to a third party individual or company.

5.  The relevant MoneyGram MTCs issued by the complicit agents and unindicted co-conspirators named in this indictment were made payable to Trinity Car/Truck Rental, Tara Travels and Tours, 1730899 Ontario Inc. and 1738083 Ontario Inc., and not the intended or listed MoneyGram money transfer payee.

6.  The defendant **LUCAS OBI** was the registered owner of Trinity Car &Truck Rental and Tara Travels and Tours.  **OBI's** wife was the registered owner of 1730899 Ontario Inc.  The defendant **ELOHO IDISI-ARAH** was the registered owner of 1738083 Ontario Inc.

7.  The relevant Western Union MTCs issued by the complicit agents and unindicted co-conspirators named in this indictment were made payable to the intended or listed payee, a fictitious name.  The MTCs were fraudulently endorsed, and stamped for deposit by Canada Cash Express Inc., an entity owned and controlled by the defendant **LUCAS OBI**.  The MTCs were deposited to bank accounts controlled by the defendant **LUCAS OBI**.

8.  If a sender of a fraud induced money transfer reported their victimization to Western Union or MoneyGram, the MSB would log the transaction as a Consumer Fraud Report (CFR).  Only a fraction of those victimized actually reported their victimization to Western Union and MoneyGram.  Western Union and MoneyGram calculated the cumulative number and dollar value of the Consumer Fraud Reports processed by a particular agent.  If an agent's CFR numbers were materially excessive, the agent was sometimes terminated by Western Union and MoneyGram for their apparent complicity in mass marketing fraud activity.  Each of the agents named in this indictment were terminated by

either Western Union or MoneyGram.

9. Regardless of the expected city and state listed by MoneyGram and Western Union money transfers senders, the money transfers relevant to this Indictment were converted to cash and MTCs in the Greater Toronto, Ontario Canada Area by the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other complicit money service business agents known and unknown to the grand jury. The complicit agents processed the fraud induced money transfers in the absence of bona-fide payees. Instead, the money transfer "serial numbers" were presented via telephone or text messages to the complicit agents. The complicit agents processed the transactions and typically handed the MTCs to the defendant **LUCAS OBI,** or **OBI's** designate. The MoneyGram MTCs, including those issued by defendant agents **ELOHO IDISI-ARAH** and **MUYIWA OYEGOKE,** were made payable to third party companies controlled by the defendants **ELOHO IDISI-ARAH** and **LUCAS OBI.** The Western Union MTCs were made payable to the fictitious name payees, endorsed, and deposited to bank accounts controlled by the defendant **LUCAS OBI.** The fraud proceeds were withdrawn from the **IDISI–ARAH** and **OBI** controlled accounts and distributed among the defendants, complicit agents, middlemen and mass marketers. The defendants kept or shared an approximate 10% to 15% cut of the fraud induced money transfers for their role in the conspiracy.

10. Beginning in or about 1999, the defendant **LUCAS OBI,** a Nigerian born resident of Toronto, Ontario, Canada, recruited various individuals to apply for Ontario business registrations and Money Service Business agent agreements. The applicants concealed from the Ontario government, Western Union and MoneyGram that the defendant **LUCAS OBI** was the true owner of the enterprise, and controlled its operation.

11. Beginning in or about 1999 through 2001, **LUCAS OBI**, through various unindicted co-conspirators, controlled a Western Union outlet known as Money Spot.   In or about March 2002, after Western Union closed Money Spot, an unindicted co-conspirator, the reported wife of **LUCAS OBI,** applied for and was awarded a Western Union Canada Agency Agreement in the name Canada Cash Express.   During the period April 2005 through October 2005, alone, Western Union senders reported that 26 money transfers totaling $43,532 paid at Canada Cash Express were induced by fraudulent mass marketing activity. Western Union suspended Canada Cash Express' authority to process Western Union money transfers during October 2005 due to Canada Cash Express' apparent complicity in mass marketing fraud and money laundering activity.

12. At or about this same time, the unindicted co-conspirator wife of **LUCAS OBI** applied for a MoneyGram agency, also in the name Canada Cash Express, at a different address in the Greater Toronto Area.   During the period October 2005 through July 2006, Canada Cash Express processed 1,570 incoming MoneyGram money transfers totaling $1,594,306.   Of those 1,570 receive transactions, all but two (2) originated from the United States.  During the period November 2005 through July 2006, MoneyGram senders reported that 173 money transfers totaling $196,486 paid at Canada Cash Express were induced by fraudulent mass marketing activity.   MoneyGram restricted Canada Cash Express' authority to process incoming MoneyGram money transfers during July 2006 due to the excessive high volume of fraud complaints.   Canada Cash Express continued, however, to process outgoing (send) money transfers through July 2009.  The bulk of the transfers and monies were sent to high risk mass marketing fraud and money laundering destination countries to include Jamaica, Nigeria and Romania.   The defendants **ELOHO IDISI–ARAH** and **LUCAS OBI**, as the listed money transfer sender, sent money transfers from Canada Cash Express.

13. Beginning in or about January 2006, the defendant **LUCAS OBI,** and co-conspirators, known and unknown to the grand jury, recruited new and existing Western Union agents to process fraud induced money transfers.  The fraud induced MTCs issued by each agent location were stamped for deposit by Canada Cash Express, a bank account controlled by **LUCAS OBI.**  During the period January 2006 through April 2006, Western Union MTCs totaling $2.4 million (Canadian) were deposited to the Canada Cash Express Account. Western Union terminated the agents that issued MTCs which were deposited to the Canada Cash Express account due to the agents' apparent complicity in mass marketing fraud and money laundering activity.

14. In or about June 2006, unindicted co-conspirators were simultaneously awarded Western Union and MoneyGram agency agreements in the name Cash On The Spot at 1528 Dundas Street West, Toronto.  During October and November 2006, alone, Western Union senders reported that 25 money transfers totaling $52,430 paid at Canada On The Spot were induced by fraudulent mass marketing activity.  Western Union MTCs issued by Cash On The Spot were stamped for deposit by Canada Cash Express.  Western Union suspended Cash On The Spot's authority to process Western Union money transfers.   During the period August 2006 through January 2007, MoneyGram senders reported that 201 money transfers totaling $183,197 paid at Canada On The Spot were induced by fraudulent mass marketing activity.  MoneyGram terminated Cash On The Spot's authority to process MoneyGram money transfers during January 2007.

15. In or about September 2007, the defendant **ELOHO IDISI-ARAH**, identifying himself as the 100% owner, submitted applications for  MoneyGram agency agreements in the names Joy's Beauty Supply and T. I. Wireless.

16. In or about November 2007 and March 2008, **IDISI-ARAH**, again identifying himself as the 100% owner, submitted applications for MoneyGram agency agreements in the names Phone Flash and Delta Cash, respectively. The Delta Cash application listed the same address as Cash On The Spot, 1528 Dundas Street, Toronto. MoneyGram awarded International Money Transfer Agreements, as requested, to **IDISI-ARAH**.

17. During the period November 2007 through March 2009, incoming money transfers totaling $5.3 million were processed for payment at the four (4) **IDISI-ARAH** outlets. Of the $5.3 million received, $5.1 million, 98%, originated from the United States. During the period November 2007 through March 2009, MoneyGram senders reported that 585 money transfers totaling $633,047 paid at Joy's Beauty Supply, T. I. Wireless, Phone Flash and Delta Cash were induced by fraudulent mass marketing activity. MoneyGram MTCs issued by the **IDISI-ARAH** outlets were typically made payable to third party companies, not the reported money transfer payee. During the 15-month period beginning January 2008, alone, MTCs totaling $1,263,546 issued by the **IDISI- ARAH** outlets were made payable to companies owned, registered and managed by the defendant **LUCAS OBI**. MoneyGram terminated **IDISI-ARAH's** authority to process MoneyGram money transfers during March 2009 due to his apparent complicity in mass marketing fraud and money laundering activity.

18. In or about October 2007, an unindicted co-conspirator, the reported wife of the defendant **MUYIWA OYEGOKE,** applied for a MoneyGram International Money Transfer Agreement in the name Kuddies Exclusive. The defendant's wife reported that she was the 100% owner and sole applicant. In so doing, the defendant **MUYIWA OYEGOKE** and the unindicted co-conspirator concealed the defendant's role in the enterprise and the defendant's extensive criminal history from MoneyGram. MoneyGram awarded an International Money Transfer Agreement, as requested, to the unindicted co-conspirator. During the period May 2008 through January 2009, MoneyGram senders reported that 250 money

transfers totaling $521,795 paid at Kuddies Exclusive were induced by fraudulent mass marketing activity.  MoneyGram MTCs issued by the defendant **MUYIWA OYEGOKE** as Kuddies Exclusive were typically made payable to third party companies, not the reported money transfer payee.  During the period May 2008 through January 2009, MTCs totaling $176,537 issued by the defendant **OYEGOKE** were made payable to companies owned, registered and managed by the defendant **LUCAS OBI**.  During the period September through December 2008, MTCs totaling $13,415 issued by the defendant **OYEGOKE** were made payable to 1738083 Ontario Inc., a company registered to the defendant **ELOHO IDISI-ARAH**.  MoneyGram terminated Kuddies Exclusive's authority to process MoneyGram money transfers during February 2009 due to its apparent complicity in mass marketing fraud and money laundering activity.

19. The table, below, lists the MoneyGram agent locations that processed fraud induced money transfers in a manner that maintained the anonymity of the mass marketers, and concealed the nature, location, source, ownership, and control of the fraud proceeds.  The table lists the number and dollar value of the Consumer Fraud Reports (CFRs) processed by the MoneyGram agent, along with the known dollar value of the Money Transfer Checks (MTCs) issued by the agent payable to the companies owned and controlled by the defendant **LUCAS OBI**. All of the known MTCs were issued during the fifteen (15) month period beginning January 2008.

| Agent Name | # CFRs | $ CFRs | MTCs total |
|---|---|---|---|
| A1 COPY CENTRE | 52 | $114,480 | $41,955 |
| ALL IN ONE STORE | 172 | $258,599 | $329,421 |
| CANADA CASH EXPRESS | 173 | $196,486 | $5,734 |
| CASH ON THE SPOT | 201 | $183,197 | 2006 – 2007 |
| DELTA CASH | 48 | $37,760 | $147,734 |
| GOLD AND JEWEL COMPUTER CONSULTING | 24 | $40,154 | $103,544 |
| JOYS BEAUTY SUPPLY | 391 | $429,414 | $1,005,759 |
| KUDDIES EXCLUSIVE | 250 | $521,795 | $176,537 |
| MAC INTERNET CAFE & COMMUNICATION | 104 | $290,350 | $10,028 |
| MAJEK SOLUTIONS INC | 96 | $255,816 | $138,263 |
| NHF ENTERPRISE | 154 | $114,242 | $3,349 |
| PHONE FLASH | 120 | $145,835 | Net Settle |
| ROSEM BUSINESS SERVICE | 85 | $255,209 | $30,305 |
| T.I. WIRELESS POINT | 26 | $20,038 | $110,053 |
| VIDEO SUPPERMART STORE | 370 | $514,179 | $341,903 |
| Totals | 2,266 | $3,377,554 | $2,444,585 |

20. The table, below, lists the Western Union agent locations that processed fraud induced money transfers in a manner that maintained the anonymity of the mass marketers, and concealed the nature, location, source, ownership, and control of the fraud proceeds. The table lists the number and dollar value of the Consumer Fraud Reports (CFRs) processed by the Western Union agents. MTCs issued pursuant to the reported fraud induced money transfers, (CFRs), were deposited to bank accounts controlled by the defendant **LUCAS OBI**.

| Agent Name | # CFRs | CFRs $s |
|---|---|---|
| CANADA CASH EXPRESS | 26 | $43,532 |
| CASH ON THE SPOT | 25 | $52,340 |
| CHEQUES CASHED | 135 | $240,436 |
| CHRIST MART CORPORATION | 42 | $50,880 |
| DOLLAR BLITZ | 275 | $399,167 |
| HOLIDAY SEASONS TRAVEL | 17 | $31,023 |
| NATIONWIDE TRAVEL LTD | 22 | $58,842 |
| NICEYS FOODMART II | 13 | $19,999 |
| ROZIS VARIETY | 97 | $84,649 |
| STUDIO 812 | 14 | $32,345 |
| UNITY FASHION BOUTIQUE | 18 | $44,418 |
| VIRSA ENTERTAINMENT | 21 | $31,675 |
| Totals | 705 | $1,089,306 |

21. During the period 2005 through 2010, Western Union and MoneyGram money transfer senders reported that 2,971 money transfers, totaling $4,466,860 processed by the agent locations owned by the defendants and unindicted co-conspirators named herein were fraud induced.  It is well established that only a fraction of the senders of fraud induced money transfers report their victimization to Western Union and MoneyGram.  Accordingly, it is conservatively estimated that the dollar value of the fraud induced money transfers processed by the defendants and unindicted co-conspirators exceeded $10 million.

## B.   The Conspiracy and Its Objects

22. Beginning in approximately 1999, and continuing through 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,**  and various co-conspirators, both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree together and with each other, to commit various offenses against the United States; that is:

   a)   To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises through the use of the United States mail and private couriers, in violation of Title 18, United States Code, Section 1341, Mail Fraud, and;

   b)   To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio and television communication in interstate and foreign commerce, any writings, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343, Wire Fraud.

c)  To conduct a financial transaction affecting interstate commerce and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, with the intent to promote the carrying on of that specified unlawful activity, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting the financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18 U.S.C. Section 1956, Laundering of Monetary Instruments.

## C.  Manner and Means of the Conspiracy and Scheme and Artifice to Defraud

23. It was part of the conspiracy and scheme and artifice to defraud that the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and various co-conspirators, both known and unknown to the Grand Jury, agreed to obtain money and property; to wit, in excess of $10 million from thousands of victims through a scheme in which the co-conspirator mass marketers falsely promised loans, lucrative financial awards and other items of value.  It was also part of the conspiracy and scheme and artifice to defraud that the victims were told that in order to receive the loans, cash prizes, compensation, or various other financial awards they were required to make advance payments, which the co-conspirators characterized as "insurance", "security deposits", "taxes", "Customs' duties", or "processing fees" dependent on the nature of the underlying scheme.  It was also part of the conspiracy and scheme and artifice to defraud that in some instances the co-conspirators delivered counterfeit checks payable to the victims to fund the advance payments.  The co-conspirators directed the victims to cash the checks and wire the cash proceeds via Western Union and MoneyGram to fictitious name payees.  The mass marketers falsely

represented to the victims that the Western Union and MoneyGram payees were bona-fide representatives of a business enterprise or governmental agency dependent on the nature of the underlying scheme.  The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirator Western Union and MoneyGram agents, known and unknown to the Grand Jury, permitted the unindicted co-conspirator mass marketers to cash money transfers in multiple fictitious names.  The complicit agents simultaneously entered false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional data-bases.  In so doing, the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and the co-conspirators concealed the true identity of the co-conspirator mass marketers, and the nature, location, source, ownership, and control of the fraudulent proceeds.  After the victims completed the Western Union and MoneyGram money transfers, the co-conspirators failed to distribute any of the promised loans, cash prizes, compensation, financial awards or products, and failed to refund the purported pre-paid "taxes", "Customs' duties", "processing fees", "collateral payments", "security deposits" and "insurance premiums".  The counterfeit checks deposited and cashed by the victims were returned unpaid, and the victims were responsible to reimburse the banks or entities which cashed the checks.  In order to effect this conspiracy and scheme and artifice to defraud, the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and the various co-conspirators, both known and unknown to the grand jury, aided and abetted each other and with the knowledge and consent of all of the parties, engaged in the following fraudulent conduct:

a) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE** processed, or caused to be processed, the fraud induced Western Union and MoneyGram money transfers without the presence of a true Western Union or MoneyGram payee at the agent locations.

b) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE** processed, or caused to be processed, numerous Western Union and MoneyGram money transfers payable to multiple fictitious name payees on behalf of individual co-conspirators thereby not only maintaining the anonymity of the co-conspirators, but also evading the reporting requirements of the United States Bank Secrecy Act and Canada's Proceeds of Crime (Money Laundering) & Terrorist Financing Act (PCMLTFA).

c) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE** entered, or caused to be entered, false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional data-bases incident to these transactions thereby maintaining the anonymity of the true cash recipient, and creating the illusion that a bona-fide payee physically entered the outlet.   Furthermore, any sender or payee data reported to the United States and Canadian Treasury Departments by Western Union and MoneyGram for the suspicious transactions processed by the complicit agents was false.

d) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,**   and other co-conspirators, converted the fraud induced Western Union and MoneyGram money transfers to a combination of MTCs, cash, checks, bank wires and money transfers for their own personal enrichment and the enrichment of the co-conspirator mass marketers and middlemen.

e) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** or co-conspirators acting at their direction, did not complete Western Union and MoneyGram "To Receive Money" and "Receive" forms, or endorse Western Union and MoneyGram receipts and checks

issued incident to the fraud induced transactions.

f) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirators, issued, or caused to be issued, MoneyGram MTCs payable to third party entities, not the intended MoneyGram money transfer payee.

g) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirators, deposited, or caused to be deposited, the Western Union and MoneyGram MTCs in a manner which concealed the true nature, location, source, ownership, and control of the proceeds.

h) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirators, withdrew, or caused to be withdrawn, the proceeds of the Western Union and MoneyGram MTCs via a combination of cash and bank drafts which further concealed the true nature, location, source, ownership, and control of the proceeds.

i) The defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirators, distributed the proceeds of the Western Union and MoneyGram MTCs in a manner which further concealed the true nature, location, source, ownership, and control of the proceeds.

## D.  Overt Acts

24. On about June 26, 2005, the unindicted co-conspirator wife of the defendant **LUCAS OBI**, identifying herself as the 100% owner operator and President of Canada Cash Express, applied for a MoneyGram agency agreement.

25. On or about September 4, 2007, the defendant **ELOHO IDISI-ARAH**, identifying himself as the 100% owner operator and President of Joy's Beauty Supply and T. I. Wireless Point, applied for two MoneyGram agency agreements.

26. On about October 30, 2007, the unindicted co-conspirator wife of the defendant **MUYIWA OYEGOKE**, identifying herself as the 100% owner operator and President of Kuddies Exclusive, applied for a MoneyGram agency agreement.

27. On or about November 30, 2007, the defendant **ELOHO IDISI-ARAH**, identifying himself as the 100% owner operator and President of Phone Flash, applied for a MoneyGram agency agreement.

28. On or about March 27, 2008, the defendant **ELOHO IDISI-ARAH**, identifying himself as the 100% owner operator and President of Delta Cash, applied for a MoneyGram agency agreement.  **IDISI-ARAH** listed 1738083 Ontario Inc. as the legal name for Delta Cash, and submitted Ontario Articles of Incorporation to document ownership.

29. On or about May 20, 2008, the defendant **ELOHO IDISI-ARAH**, as Delta Cash, issued, or caused to be issued, eight (8) MoneyGram MTCs totaling $11,180 (US) payable to Trinity Car/Truck Rental, to include a MTC issued for a $930 advance fee loan fraud induced money transfer sent by J. T., a York County, Pennsylvania victim.

30. On or about June 20, 2008, the defendant **ELOHO IDISI-ARAH**, as Joy's Beauty Supply, issued, or caused to be issued, eleven (11) MoneyGram MTCs totaling $15,314.16 (US) payable to Trinity Car/Truck Rental, to include a MTC issued for a $1,500 advance fee loan fraud induced money transfer sent by R. J., a York County, Pennsylvania victim.

31. On or about November 17, 2008, an unindicted co-conspirator MoneyGram agent, as All In One Store, issued, or caused to be issued, four (4) MoneyGram MTCs totaling $3,640 (US) which were made payable to 1738083 Ontario Inc., reported legal name for Delta Cash registered to the defendant **ELOHO IDISI-ARAH**.

32. On or about November 17, 2008, an unindicted co-conspirator MoneyGram agent, as All In One Store, issued, or caused to be issued, four (4) MoneyGram MTCs totaling $3,830 (US) which were made payable to Trinity Car/Truck Rental. The defendant **LUCAS OBI** is the registered owner of Trinity Car/Truck Rental.

33. On or about December 9, 2008, the defendant **MUYIWA OYEGOKE,** as Kuddies Exclusive, issued, or caused to be issued, eleven (11) MoneyGram MTCs totaling $10,111.64 (US) payable to Tara Travels/Tours (2), and Trinity Car/Truck Rental (9), to include a MTC issued for a $911.64 advance fee loan fraud induced money transfer sent by K. O., a Luzerne County, Pennsylvania victim.

34. On or about December 12, 2008, an unindicted co-conspirator doing business as K C Money Transfer obtained a $30,000 (Cdn) bank draft from the proceeds of fraud induced MoneyGram money transfers. The draft was made payable to Trinity Car/ Truck Rental.

35. On or about December 23, 2008, the defendant **MUYIWA OYEGOKE,** as Kuddies Exclusive, issued, or caused to be issued, five (5) MoneyGram MTCs totaling $5,270 (US) which were made payable to 1738083 Ontario Inc., reported legal name for Delta Cash registered to the defendant **ELOHO IDISI-ARAH**.

36. On or about February 26, 2009, the defendant **ELOHO IDISI-ARAH**, as T. I. Wireless Point, issued, or caused to be issued, four (4) MoneyGram MTCs totaling $2,724.16 (US) payable to Trinity Car/Truck Rental, to include a MTC issued for a $624.16 advance fee loan fraud induced money transfer sent by T.

L., a Wayne County, Pennsylvania victim.

37. On or about October 14, 2009, an unindicted co-conspirator Western Union agent, as Holiday Seasons Travel, issued, or caused to be issued, three (3) Western Union MTCs totaling $2,765.36 (Cdn) which were stamped for deposit by Canada Cash Express and deposited to a Bank of India account controlled by the defendant **LUCAS OBI**.  The corresponding $2,800 (US) money transfer was sent from York County, Pennsylvania by B. T., a victim of a person in need (grandparents) scam.

38. On or about October 29, 2009, an unindicted co-conspirator Western Union agent, as Rozis Variety, issued, or caused to be issued, three (3) Western Union MTCs totaling $2,817,90 (Cdn) which were stamped for deposit by Canada Cash Express and deposited to a Bank of India account controlled by the defendant **LUCAS OBI**.  Two of the corresponding $930 (US) money transfers were sent from York County, Pennsylvania by J. H. and K. H., victims of an advance fee loan fraud.

39. On or about December 9, 2009, an unindicted co-conspirator Western Union agent, as Dollar Blitz, issued, or caused to be issued, thirty (30) Western Union MTCs totaling $19,323.41 (Cdn) which were stamped for deposit by Canada Cash Express and deposited to a Bank of India account controlled by the defendant **LUCAS OBI**.  Two of the MTCs totaling $1,078.65 corresponded to a $1,060 (US) money transfer sent from Luzerne County, Pennsylvania by H. M., a victim of an advance fee loan fraud.

In violation of Title 18, United States Code, Section 371, Conspiracy to Commit Section 1341 (Mail Fraud), Section 1343 (Wire Fraud),  and Section 1956 (Laundering of Monetary Instruments)

## COUNTS 2-16
### (Wire Fraud)

The Grand Jury Further Charges:

1.     The information and allegations set forth in Counts 1 of this Indictment are incorporated in Counts 2 through 16 as if fully set forth herein.

.      Between 1999 and 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE,** and other co-conspirators, known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, did devise a scheme or artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1 of this Indictment, and, on or about the dates set forth below, did cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writing, sign, signal, picture or sound for the purpose of executing such scheme or artifice, as described below:

| Count | Date | Sender | Send Location | Amount | Payee | Outlet | Prov |
|---|---|---|---|---|---|---|---|
| 2 | 5/15/2008 | M. Z. | MONTOURSVILLE, PA | $2,350.00 | CHERYL BURKS | DELTA CASH | ON |
| 3 | 5/20/2008 | J. T. | YORK, PA | $930.00 | JACKIE TAYLOR | DELTA CASH | ON |
| 4 | 6/20/2008 | R. J. | YORK, PA | $1,500.00 | LEONA THORN | JOYS BEAUTY SUPPLY | ON |
| 5 | 9/26/2008 | T. B. | STATE COLLEGE, PA | $899.99 | PAUL BLANCHERT | JOYS BEAUTY SUPPLY | ON |
| 6 | 11/7/2008 | K. H. | HAZLETON, PA | $750.00 | JUDITH  MCADAMS | JOYS BEAUTY SUPPLY | ON |
| 7 | 12/8/2008 | K. O. | PITTSTON, PA | $911.64 | SHERRY SANDERS | KUDDIES EXCLUSIVE | ON |
| 8 | 12/18/2008 | J. L. | WILKES BARRE, PA | $920.00 | JENNIFER MKGUIRE | ALL IN ONE STORE | ON |
| 9 | 2/19/2009 | K. H. | PITTSTON, PA | $900.00 | WENDY GOMEZ | ALL IN ONE STORE | ON |
| 10 | 2/26/2009 | T. L. | HONESDALE, PA | $624.16 | TYLER BWYER | T.I. WIRELESS POINT | ON |
| 11 | 3/26/2009 | B. D. | SAINT CLAIR, PA | $900.00 | BETHANY ROBERTSON | GOLD AND JEWEL | ON |
| 12 | 10/9/2009 | B. F. | POTTSVILLE, PA | $605.00 | RACHELLE COPENHAVER | DOLLAR BLITZ | ON |
| 13 | 10/14/2009 | B. T. | RED LION, PA | $2,800.00 | STEVE ANTHONY | HOLIDAY SEASONS | ON |
| 14 | 11/3/2009 | J. D. | WILKES BARRE, PA | $850.00 | LISA MEEKAM | DOLLAR BLITZ | ON |
| 15 | 11/5/2009 | J. D. | WILKES BARRE, PA | $850.00 | LISA MEEKAM | ROZIS VARIETY | ON |
| 16 | 12/9/2009 | H. M. | WILKES BARRE, PA | $1,060.00 | CHARLOTTE PEARSON | DOLLAR BLITZ | ON |

All in violation of Title 18, United States Code, Sections 2 and 1343.

## COUNTS 17 through 25

### (Laundering of Monetary Instruments)

The Grand Jury Further Charges That:

1.  The allegations contained within Counts 1 through 16 of this Indictment are incorporated in Counts 17 through 25 as if fully set forth herein.

2.  During the period 1999 through 2010, within the Middle District of Pennsylvania and elsewhere, the defendants **ELOHO IDISI-ARAH, LUCAS OBI,** and **MUYIWA OYEGOKE**, and others both known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury did knowingly and willfully conduct financial transactions affecting interstate commerce and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, with the intent to promote the carrying on of that specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting the financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as set forth below:

| Count | On or About | Financial Transaction Amount | Sender | Canadian Outlet/MTC Payee or Stamped Endorsement |
|---|---|---|---|---|
| 17 | 05/20/2008 | $930 (US)<br>$883.01 (Cdn)<br>MoneyGram Money Transfer and MTC | J. T. York, PA | Delta Cash<br>Trinity Car/Truck Rental |
| 18 | 06/20/2008 | $1,500.00 (US)<br>$1,460.14 (Cdn)<br>MoneyGram Money Transfer and MTC | R. J. York, PA | Joys Beauty Supply<br>Trinity Car/Truck Rental |
| 19 | 12/3/2008 | $1,280.00 (US)<br>$1,527.88 (Cdn)<br>MoneyGram Money Transfer and MTC | S. B. York, PA | Majek Solutions Inc.<br>Canada Cash Express, Inc. |
| 20 | 12/9/2008 | $911.64 (US)<br>$1,109.51 (Cdn)<br>MoneyGram Money Transfer and MTC | K. O. Pittston, PA | Kuddies Exclusive<br>Tara Travels/Tours |
| 21 | 2/19/2009 | $900.00 (US)<br>$1,086.46 (Cdn)<br>MoneyGram Money Transfer and MTC | K. H. Pittston, PA | All In One Store<br>1730899 Ontario Inc. |
| 22 | 2/26/2009 | $624.16  (US)<br>$750.78 (Cdn)<br>MoneyGram Money Transfer and MTC | T. L. Honesdale, PA | T. I. Wireless Point<br>Trinity Car/Truck Rental |
| 23 | 10/14/2009 | $2,800  (US)<br>$2,765.36 (Cdn)<br>Western Union Money Transfer and MTCs | B. T. Red Lion, PA | Holiday Seasons Travel<br>Canada Cash Express Inc. |
| 24 | 10/29/2009 | $930 (US)<br>$971.09 (Cdn)<br>Western Union  Money Transfer and MTC | K. H.  Pottsville, PA | Rozis Variety<br>Canada Cash Express Inc. |
| 25 | 12/09/2009 | $1,060  (US)<br>$1,078.65 (Cdn)<br>Western Union  Money Transfer and MTCs | H. M. Wilkes Barre, PA | Dollar Blitz<br>Canada Cash Express Inc. |

All in violation of Title 18 U.S.C. Section 1956(a)(2).



*Peter J. Smith* *by CDC*
PETER J. SMITH
United States Attorney

Dated: _12-12-2012_